**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**MAURICE JACKSON** **PLAINTIFF**

**v.** **CASE NO. 4:23-CV-00967-BSM**

**ARKANSAS GAME AND FISH COMMISSION** **DEFENDANT**

**ORDER**

The Arkansas Game and Fish Commission's motion for summary judgment [Doc. No. 36] is granted and Maurice Jackson's complaint is dismissed with prejudice.

I. BACKGROUND

The undisputed facts as set forth in Jackson's Response to the Commission's Statement of Undisputed Material Facts (SUMF), Doc. No. 39, are as follows.

The Commission is an agency of the state of Arkansas. *Id.* ¶ 1. Its board hires a director who oversees the Commission's day to day operations. *Id.* ¶ 3. The director oversees a chief of staff, who oversees three deputy directors. *Id.* ¶ 4. Deputy director one supervises the environmental coordination, operations, fisheries, and fiscal divisions. *Id.* ¶ 5. Deputy director two supervises the licensing section and the communications, education, and information technology divisions. *Id.* Deputy director three supervises the research, geographic information system, and wildlife management divisions. SUMF ¶ 5. Each division has a chief who, along with assistant division chiefs, oversees the Commission's employees. *Id.* ¶ 6.

The Commission has an employee manual with a recruitment and selection policy

mandating nondiscriminatory hiring practices. *Id.* ¶¶ 7, 9. Applicants are selected for interviews based upon their qualifications. *Id.* ¶ 12. All interviews are conducted in a structured format with all applicants being asked the same questions. *Id.* ¶ 13. The applicants are then ranked on how they compare with the other applicants, and generally the applicant with the highest overall ranking is hired. *Id.* ¶¶ 14–16.

Jackson was hired by the Commission in August 2012 to serve as an education program specialist. SUMF ¶¶ 17, 19. He was promoted to biologist in the fisheries division in August 2015 and worked in the family and community fishing program. *Id.* ¶ 21. He worked strictly as a fisheries conservation person. *Id.* ¶ 23.

Jackson applied for a deputy director position that was advertised in the summer of 2019. *Id.* ¶ 24. At some point, Jackson was informed that the advertised position was being taken down and modified and that the position would be reposted in the future. *Id.* ¶ 25. Jackson was encouraged to re-apply when the position was reposted. *Id.* When it was reposted, the position provided that applicants having a certification from a management leadership training program were preferred. SUMF ¶ 26. Although Jackson did not have a management certification, he applied for the position, but was not selected for an interview. *Id.* ¶¶ 27–30. Another deputy director position opened in September of 2021 but Jackson did not apply for it. *Id.* ¶¶ 31, 33.

In November 2021, Chris Racey was promoted to the chief of staff position despite the position never being advertised. *Id.* ¶¶ 35–36. Although Racey and Jackson had the same educational credentials, Racey was a deputy director at the time he was promoted. *Id.*

¶¶ 35, 37.

To improve his chances of being promoted, Jackson met with Betty Bryant who occasionally served on interview panels. *Id.* ¶ 39. He asked Bryant what he could do to perform better in interviews, and she gave him pointers. SUMF ¶¶ 39–40. Jackson also asked Tommy Laird how he could improve in interviews. *Id.* ¶ 43. Laird, who served as the assistant chief of fisheries, also gave Jackson advice on how to improve in interviews. *Id.* ¶¶ 43–44, 48.

In April 2022, a division assistant chief position in education was posted, and Jackson and J.J. Gladden applied for it. *Id.* ¶¶ 45–46. Gladden was serving as the resource education program coordinator at the time, and had previously been a hatchery biologist. *Id.* ¶ 47. After being interviewed by the same interviewers and asked the same questions, Gladden was unanimously ranked above Jackson. SUMF ¶¶ 48–49. The interviewers based their rankings on Gladden's clear and concise answers to their questions, which indicated that he had well-developed management and leadership abilities. *Id.* ¶ 50. Gladden, who is not black, was then promoted over Jackson. *Id.* ¶ 51.

Later in April 2022, a deputy director position was posted, and Jackson, Ben Batten, Brad Carner, and Luke Lewis applied for it. *Id.* ¶ 52. At the time the four applicants applied, Batten was the chief of fisheries, Carner was the wildlife division chief, and Lewis was the assistant chief of wildlife. *Id.* ¶ 53. Jackson was a biologist, which was the least senior position of the four applicants. *Id.* At their interviews, the four applicants were asked the same questions. SUMF ¶ 54. After interviewing the four applicants, the Commission created

a second deputy director position, and decided to fill it with one of the four applicants. *Id.* ¶55. The interviewers unanimously ranked the applicants in the following order: (1) Carner, (2) Batten, (3) Lewis, and (4) Jackson. *Id.* ¶ 56. Carner and Batten, both of whom are not black, were then selected for the two positions. *Id.* Jackson met with the interviewers to get feedback about his interview. *Id.* ¶ 57. The interviewers provided feedback and encouraged Jackson to apply for other positions that may come open. *Id.* ¶ 58. Jackson then filed a timely charge of discrimination with the EEOC regarding the September 2021 deputy director position, the November 2021 chief of staff position, and the April 2022 deputy director and chief of education positions. SUMF ¶¶ 59, 63. After receiving his right to sue, he sued the Commission for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and the Arkansas Civil Rights Act of 1993. *Id.* ¶ 63. The Commission is moving for summary judgment on those claims.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in a light most favorable to the non-moving party. *Holland v. Sam's Club*, 487

F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

III. DISCUSSION

The Commission's motion for summary judgment is granted on all claims because the parties agree on the facts and there are not material issues of fact to be resolved.

A. Race Discrimination

Jackson has not come forth with direct evidence of racial discrimination, so he must establish his claims using the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Griffith v. City of Des Moines*, 387 F.3d 733, 736–37 (8th Cir. 2004). This requires Jackson to establish a prima facie case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802. If he does this, the burden shifts to the Commission to provide legitimate non-discriminatory reasons for each of its hiring decisions. *Id.* If the Commission meets this burden, the burden shifts back to Jackson to show that the reasons provided by the Commission are merely pretext for discrimination. *Id.* at 804.

Summary judgment is granted on Jackson's claims regarding the April 2022 chief of education and two deputy director positions because Jackson has failed to establish a prima facie case of discrimination. To meet this burden, Jackson was required to show that: (1) he is a member of a protected group; (2) he applied for promotions to positions for which he was qualified; (3) he was not promoted; and (4) other similarly situated non-black applicants were promoted. *See Bennett v. Nucor Corp.*, 656 F.3d 802, 819–20 (8th Cir. 2011). The problem

Jackson has is that he cannot show that he was similarly situated to the applicants who received the promotions. *See Lucke v. Solsvig*, 912 F.3d 1084, 1087 (8th Cir. 2019) (the test for determining whether employees are similarly situated is rigorous and those employees must be similarly situated in all the relevant respects). This is true because Gladden and Jackson served in totally different positions and had different responsibilities, and the positions held by Carner and Batten were senior to the position held by Jackson and they performed different roles. SUMF ¶¶ 21, 23, 47, 53; *see Morgan v. A.G. Edwards & Sons, Inc*., 486 F.3d 1034, 1043 (8th Cir. 2007) (plaintiff not similarly situated to individuals in different positions or who report to a different supervisor).

Summary judgment is granted on Jackson's claims regarding the September 2021 deputy director position because Jackson did not apply for the position. *See* Mot. Summ. J., Doc. No. 36 (MSJ), Ex. 4 Oral Deposition of Maurice Jackson (Jackson Dep.) at 42:18–24, Ex. 6, List of All Applicant at AGF 399; *Bennett,* 656 F.3d at 819. Although Jackson testified that he did not apply for the position because the Commission told him that he was not qualified for a similar position in 2019, *see* Jackson Dep. at 44:9–21, the email from Betty Bryant informing Jackson that he was not selected for the interview does not support his memory. MSJ, Ex. 5, Email from Betty Bryant at 2. Bryant's email does not inform Jackson that he was not qualified; it merely states that he was not selected to interview for the 2019 opening. *Id.* Although Jackson's testimony differs from the contents of the email, this is not a genuine dispute necessitating a trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (for an issue of fact to be genuine, the non-moving

party must show more than "some metaphysical doubt as to the material facts"); *Viewpoint Neutrality Now! v. Bd. of Regents of Univ. of Minnesota*, 109 F.4th 1033 (8th Cir. 2024), *cert. denied sub nom.*, *Viewpoint Neutrality Now v. Bd. of Regents Univ. MN*, No. 24-655, 2025 WL 1151234 (U.S. Apr. 21, 2025) (a plaintiff may not merely rely on unsupported self-serving allegations, but must have sufficient probative evidence that would permit a finding in plainitffs favor; the purpose of summary judgment is to isolate and dispose of factually unsupported claims). Although it appears that Jackson misinterpreted Bryant's email, the plain language of the email clearly shows that his failure to apply could not have been caused by any representation from the Commission that he was unqualified. He, therefore, has not established a prima facie case. *McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1136 (8th Cir. 2006).

Summary judgment is granted on Jackson's claims regarding the November 2021 promotion of Chris Racey to chief of staff for two reasons. First, the chief of staff position was not a logical advancement for Jackson, so the Commission was not required to inform him that the position was open. *See Paxton v. Union Nat. Bank*, 688 F.2d 552, 568 (8th Cir. 1982) (a plaintiff can make out a prima facie case of discrimination even when the plaintiff did not apply for the position, so long as the position was a logical advancement for the plaintiff). Second, Jackson never intimated to anyone that he wanted the chief of staff position, so the Commission would not have been aware of his interest. *Id.*

Even if Jackson could establish a prima facie case of race discrimination for any of the positions, the Commission has presented a legitimate, nondiscriminatory reason for its

hiring decisions. In each circumstance, other than the hiring of Racey, the interviewers individually ranked the applicants and chose those applicants who received the highest combined scores. *See Pribyl v. Cnty. of Wright*, 964 F.3d 793, 797 (8th Cir. 2020). Jackson argues that this is pretext that feeds into a racial stereotype that black people are unable to speak clearly. *See* Pl. Maurice Jackson's Resp. Def's. Mot. Summ. J. at 8–9, Doc. No. 40. Although this is a legitimate argument in some circumstances, *see Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) (stereotyped remarks can be evidence of discrimination), it is not persuasive because nothing in the record indicates that the Commission stereotyped Jackson. Indeed, the only record evidence is that the interview panels asked the same non-discriminatory questions to all applicants. SUMF ¶¶ 48–49, 54–55. Moreover, Jackson understood that he needed to work on his interviewing skills. *Id.* ¶¶ 39–40, 43–44.

Although Jackson's frustration at being passed over is understandable, federal courts have no authority to act as human resources departments that examine whether employers are making good hiring or promotions decisions. *Cronquist v. City of Minneapolis*, 237 F.3d 920, 928 (8th Cir. 2001). The role of the federal court is simply to determine whether there is evidence of discrimination permitting a trial of disputed facts; and the record does not show that there is.

B. Retaliation

Summary judgment is granted on Jackson's retaliation claim because he has not shown a causal connection between an adverse employment action and protected activity. *See Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013). To

establish a prima facie case of retaliation, Jackson must show that: (1) he engaged in protected activity, (2) he suffered a materially adverse employment action, and (3) there was a causal connection between elements one and two. *Id.* Jackson satisfies the first element because he engaged in protected activity when he complained to a director in the summer of 2021 that he had concerns about the lack of diversity at the Commission. *See Gagnon v. Sprint Corp.*, 284 F.3d 839, 854 n.4 (8th Cir. 2002), *abrogated on other grounds by Desert Palace v. Costa*, 539 U.S. 90 (2003) (internal or informal complaints to superiors are protected under Title VII). He satisfies the second element because he suffered adverse employment actions when he was passed over for the chief of staff promotion in November of 2021 and when he was passed over for the positions in April of 2022. The problem Jackson has is that there is nothing in the record establishing a causal connection between his statements to the director and the Commission's decisions not to promote him. Moreover, there is not even an inference of retaliation because the time between his statements to the director and the first promotion decision is too attenuated. *See Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611, 616 (8th Cir. 2003) (two months is too long to support an inference of causation). Finally, if Jackson made out a prima facie case of retaliation, as explained above, the Commission has presented non-discriminatory reasons for its decisions to promote other applicants over Jackson. *Pribyl*, 964 F.3d at 797.

C. Arkansas Civil Rights Act Claims

Summary judgment is granted on Jackson's ACRA claims because Jackson does not contest the motion but moves to non-suit. *See* Pl. Maurice Jackson's Resp. Def.'s Mot.

Summm. J. at 3; *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009).

IV. CONCLUSION

For these reasons, the Arkansas Game and Fish Commission's motion for summary judgment is granted.

IT IS SO ORDERED this 14th day of May, 2025.

UNITED STATES DISTRICT JUDGE